**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36235**

| | |
|---|---|
| **STATE OF IDAHO,** )<br>)<br>    **Plaintiff-Respondent,** )<br>)<br>**v.** )<br>)<br>**ALEJANDRO MANUEL CASTILLO,** )<br>)<br>    **Defendant-Appellant.** )<br>) | **2010 Unpublished Opinion No. 705**<br><br>**Filed: November 12, 2010**<br><br>**Stephen W. Kenyon, Clerk**<br><br>**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Juneal C. Kerrick, District Judge.

Judgment of conviction and sentence for aiding and abetting robbery, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett LLP, Boise, for appellant. Deborah A. Whipple argued.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent. Nicole L. Schafer argued.

---

PERRY, Judge Pro Tem

Alejandro Manuel Castillo appeals from the judgment of conviction entered upon a jury verdict finding him guilty of aiding and abetting robbery, Idaho Code §§ 18-6501-6503, 18-204. We affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

On July 2, 2008, Anna Mireles and her family attended a fireworks display near Mercy Medical Center North in Nampa. Mireles, who was four months pregnant at the time and wearing a blue T-shirt, testified that as she walked back to her car with her daughter and her daughter's two friends, a man, later identified as Miguel Pastor, asked her whether she knew that "this was North Side territory." Mireles responded, "Are you stupid? I'm not a gang-banger. Look at me. Do I look like a gang-banger?" Mireles testified that Pastor, who was wearing a black shirt, then "gestured with his hands" and several individuals, who were all wearing

1

"red/black or . . . red belts,"[1] surrounded her, including Castillo, who was wearing a red shirt. The individuals began yelling "North Side, North Side," and Mireles' brother, who had walked ahead with Mireles' husband, ran back towards her.

According to Mireles, her brother stated that Mireles was pregnant, at which point Pastor grabbed her purse and swung it at her while simultaneously running at her brother. The purse fell to the ground and everything fell out of it. Mireles testified that her daughter bent down and put everything back in the purse and was attacked by some girls that were "part of the people" with Pastor. Mireles hit two of the females with a lawn chair that she was carrying. Mireles testified that Castillo then picked up the purse and began running with it towards a red van. Mireles said, "He took my purse," and her husband and brother ran after Castillo and a fight ensued next to the van. Mireles testified that at some point during the fight, Castillo, who no longer had the purse, attempted to jump into a little blue car.

Mireles' daughter also testified, and her testimony varied slightly from her mother's. She confirmed Mireles' account of the initial confrontation with Pastor. However, she testified that her mother put the purse down, that Pastor took the purse, swung it at Mireles, and then passed it off to Castillo. The daughter also testified that she was attacked right after she saw Castillo running off with the purse.

Another witness, Angelica Melendrez, testified that she was sitting in her van when she saw an individual in a black shirt swing a purse at someone, walk in front of her van really fast still carrying the purse, and open a door to a red van. Melendrez testified that she heard a woman yelling that someone had taken her purse. About "ten seconds later," Melendrez saw an individual in a red shirt running, and a group of guys running after him. Melendrez testified that she saw the individual wearing the red shirt getting beat up. She then called the police regarding the fight and a possible stolen purse.

When officers arrived, they recovered the purse from a red van. Castillo was located in a "dark colored" car that was "like a Dodge neon." Castillo began walking away from the vehicle, and an officer asked him to come back several times. When Castillo did not comply, the officer

---

[1]     Mireles testified that she was familiar with "gang issues" in Nampa and that, based on her general knowledge, the color red was associated with the North Side gang and the color blue was associated with the South Side gang.

2

took him into custody. The officer testified that Castillo appeared as though he had been in a fight. When Castillo was later interviewed, he told one of the investigating officers that he had been in a verbal altercation with a female regarding some comments he had made to some kids. The female left and came back with three males, one of whom had a bar and "called [Castillo] on to fight him." The officer testified that Castillo admitted he was "involved in the fight," but denied that he had taken the purse.

Castillo was ultimately charged in separate cases, which were later consolidated, with felony aiding and abetting robbery, two misdemeanor counts of battery, and a misdemeanor count of resisting and obstructing an officer. A jury found Castillo guilty of aiding and abetting robbery and resisting and obstructing an officer, but found him not guilty on the two counts of battery against Mireles' husband and brother. The court imposed a unified sentence of ten years, with two and one-half half years determinate on the aiding and abetting charge. The court imposed sixty days in jail on the resisting and obstructing charge, to run concurrent with the other sentence, with credit for time served. Castillo appeals.[2]

## II.

## ANALYSIS

### A. Conflict of Interest

Castillo contends that he was denied his state and federal constitutional rights to conflict-free counsel.[3] Specifically, he contends that the district court was aware of a potential conflict of interest, that it failed to conduct an adequate inquiry into the conflict, and that this failure amounts to a violation of his constitutional rights requiring an automatic reversal of his conviction. Castillo argues that even if an automatic reversal is not required, either because the court had no duty to inquire or because it did make a sufficient inquiry, reversal is still required because an actual conflict of interest exists.

---

[2]     While Castillo requests this Court to reverse his *convictions*, it appears that there is only an appeal as to the aiding and abetting conviction.

[3]     Although Castillo contends that both constitutions were violated, he provides no cogent reason why the Idaho Constitution should be applied differently than the United States Constitution in this case. Therefore, this Court will rely on judicial interpretation of the Sixth Amendment in its analysis of Castillo's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999) (applying rule in context of Fourth Amendment claim).

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The amendment, as applied to the states by the Due Process Clause of the Fourteenth Amendment, *Powell v. Alabama*, 287 U.S. 45, 60-61 (1932), has been interpreted to include the right to be represented by conflict-free counsel. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). The right has been accorded "not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

In order to ensure that a defendant receives conflict-free counsel, a trial court has an affirmative duty to inquire into a potential conflict whenever it knows or "reasonably should know that a particular conflict may exist." *State v. Lovelace*, 140 Idaho 53, 60, 90 P.3d 278, 285 (2003); *see also Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980). A trial court's failure to conduct an inquiry, under certain circumstances, will serve as a basis for reversing a defendant's conviction. *Cuyler*, 446 U.S. at 346-47; *Holloway v. Arkansas*, 435 U.S. 475, 488 (1978).

Whether a trial court's failure to adequately inquire into a potential conflict of interest is enough, on its own, to justify reversal depends on whether the defendant objected to the conflict at trial. *State v. Severson*, 147 Idaho 694, 703, 215 P.3d 414, 423 (2009); *see also Cuyler*, 446 U.S. at 348. "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348. The defendant need not, however, show prejudice in order to obtain relief as the conflict itself demonstrates a denial of the right to have the effective assistance of counsel. *Id.* at 349-50. "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 350. "On the other hand, once a defendant raises a timely objection to a conflict, the trial court is constitutionally obligated to determine whether an actual conflict of interest exists." *Severson*, 147 Idaho at 703, 215 P.3d at 423. "A court's failure to make a proper inquiry after a defendant's timely objection will result in the automatic reversal of the defendant's conviction." *Id.* "Because the trial court's duty to inquire after a defendant makes a timely objection is a separate and distinct obligation, a defendant in such circumstances need not show that an actual conflict adversely affected the lawyer's performance." *Id.*

In order to address Castillo's claim, it is important to note how the issue was raised below. On the morning of Castillo's trial, the district court indicated that the prosecutor desired to make a record of some matters prior to proceeding with the jury selection. The court, summarizing the events that had previously transpired affecting the case, noted that Miguel Pastor, Castillo's co-defendant, had been previously scheduled for a jury trial. Pastor's attorney, Dayo Onanubosi, who was with the Canyon County Public Defender's Office at the time, had originally requested a joint trial for Pastor and Castillo. Castillo's attorney, Alexander Briggs, who was also with the Canyon County Public Defender's Office, indicated that he would object to a joint trial.

The court further indicated that after initially requesting a joint trial, Onanubosi informed the court, at the time set for Pastor's trial, that his client could not proceed to trial because he believed there was a conflict of interest, "that they [the public defender's office] have to represent their client 100 percent, they represented what we call co-defendants, you, Mr. Castillo, as well as Mr. Pastor, and if they represent one, they needed the information from the other." The court stated at that time that there was "probably" a conflict of interest relative to the representation of the co-defendants and ordered that Pastor be assigned a "conflicts attorney" and continued his trial. The court indicated that the conflicts attorney ultimately assigned to represent Pastor was Shari Dodge.

The prosecutor generally agreed with the court's summary of the events, and attempted to further explain his perception of what was going on in Castillo and Pastor's cases. The prosecutor indicated that while the State had been ready to proceed with Pastor's case the previous month, the conflict issue was raised and a jury had to be sent home. The prosecutor also represented that while the court had ordered a conflicts attorney assigned in Pastor's case, Onanubosi had subsequently appeared in court with Pastor advising that he had waived his right to a speedy trial and also indicating that following Castillo's trial, "there was a good possibility that the conflict they had in [Pastor's] case would evaporate at that time, and indicated he would presume [sic] his representation of the defendant." The prosecutor requested that both Castillo and Pastor be afforded an in-camera proceeding without the prosecutor present where all potential conflicts could be explained to the defendants. The prosecutor also expressed his belief that the public defender's office was using the conflict issue as a tactic to try Castillo's case first and "hang onto [Pastor's] case -- depending on the outcome of [Castillo's case]." Based upon

5

these perceptions, the prosecutor requested an in-camera proceeding in order to make a record, as well as sanctions against the public defender's office for the cost of the jury.

Castillo's counsel, Briggs, responded to the prosecutor's comments stating that he had never appeared with Pastor and that he understood that Pastor had received conflict counsel the previous day. He then stated, "Mr. Castillo -- there's no conflict of interest for me representing Mr. Castillo in this trial." The prosecutor disagreed, arguing that Briggs' representation was "exactly opposite" of what Onanubosi had said was a "serious enough conflict, that they had to vacate [Pastor's] trial and back out of the case last month."

The district court expressed a concern about getting involved in a conflict of interest with respect to confidential communications between Castillo and his attorney, stating that it would not do "any good to do an in-camera," as even the court could not inquire into areas of confidentiality absent some sort of waiver. The court asked whether Castillo would be willing, with respect to whether a conflict existed, to waive his right to confidentiality, to which Castillo responded, "I'm not really -- there's no conflict that I'm aware of." The court asked whether he wanted different representation, and Castillo responded no.

The court and the prosecutor disagreed as to whether the court could conduct an in-camera hearing. The prosecutor reiterated his position that the court should "talk to the defendant" about potential conflicts of interest. The court maintained that it was unaware of any questions that it would be permitted to ask that would not interfere with the "confidentiality between attorney and client." The court indicated that if Briggs wanted an in-camera conference, he could assess the need to outweigh confidentiality rights and request such a hearing. The court also addressed Castillo, stating: "If you want to inquire further of what this attorney for the State is talking about, a conflict of interest, I'm more than willing [to] have you do that." Castillo responded, "I see no conflict."

As noted, where a defendant raises a timely objection to a conflict, the trial court is constitutionally obligated to determine whether an actual conflict of interest exists, and the failure to conduct a proper inquiry will result in an automatic reversal of the defendant's conviction. *Severson*, 147 Idaho at 703, 215 P.3d at 423. The court's duty of inquiry following a defendant's timely objection is a separate and distinct obligation and, as such, the defendant is not required to show that an actual conflict adversely affected the lawyer's performance in such a circumstance. *Id.*

6

In this case, it is not disputed that Castillo never objected to any conflict of interest. Rather, as Castillo acknowledges, the issue was raised by the prosecutor. However, Castillo contends, in a footnote, that "[t]he fact that the attorney worked for the state rather than the defendant is of no import to the question of the proper remedy." Castillo argues that because the prosecutor raised the issue, the court was constitutionally obligated to inquire, and its failure to do so requires automatic reversal. This argument fails to recognize, however, that the issue had already been presented to, and addressed by, the district court.

It is apparent that the court believed that it had dispensed with any issues relative to conflicts of interest. The court indicated that it was aware of a potential conflict regarding the two attorneys at the public defender's office representing co-defendants, and the court addressed that conflict by ordering the public defender's office to assign a conflicts attorney in Pastor's case. When the issue was raised again by the State in an effort to make a record, the court determined that it would not hold an in-camera proceeding due to its concern that it would be invading Castillo's confidentiality rights. The court's statements suggest that it was unaware of any conflicts of interest, other than the one the court believed it had already dealt with, that required the court to conduct any further inquiry. Based upon the record before us, we conclude that Castillo has not established that the court had any duty of further inquiry after it had ordered a conflicts attorney appointed in the co-defendant's case and was being assured by Castillo's counsel that no current conflict existed.

The mere fact that Castillo and Pastor were represented by attorneys in the same public defender's office does not require automatic disqualification. *See State v. Cook*, 144 Idaho 784, 794, 171 P.3d 1282, 1292 (Ct. App. 2007) ("automatically disqualifying a public defender where another attorney in the office has a conflict of interest would significantly hamper the ability to prove legal representation of indigent clients"). In *Cook*, this Court concluded that a per se rule imputing conflicts of interest to affiliated public defenders is inappropriate "where there is no indication the conflict would hamper an attorney's ability to effectively represent a client." *Id.* The Court held that "such conflict questions should be addressed by trial courts on a case-by-case basis, where the court takes individual situations into consideration to determine whether a defendant's right to counsel is threatened by competing interests." *Id.*

Although the court acknowledged a potential conflict when the issue was initially raised by Pastor's counsel and addressed it by ordering that a conflicts attorney be appointed, Castillo

maintains that a conflict existed before a conflicts attorney was assigned and relies upon the prosecutor's statements that had Castillo obtained a different attorney "they probably could have worked out a plea bargain deal where [Castillo] could have gotten off with a misdemeanor or something much less, and we would have been going after Mr. Pastor with his cooperation." This assertion, however, is belied by Castillo's attorney's representation that an offer to plead guilty to a misdemeanor had been made, but it was rejected by the State. Moreover, Castillo has not argued that the court knew or should have known about a potential conflict of interest before it was actually raised in Pastor's case. At the time set for Castillo's trial, counsel once again assured the court that no conflict existed that affected his representation of Castillo. These circumstances simply did not warrant further inquiry by the court. Castillo has failed to demonstrate any error on the part of the district court to establish a violation of his Sixth Amendment right to conflict-free counsel.

## B. Prosecutorial Misconduct

Castillo next contends that the prosecution violated his constitutional right to a fair trial by committing various acts of prosecutorial misconduct. He asserts that the prosecutor engaged in misconduct during closing and rebuttal arguments by inflaming the prejudice and passions of the jury, shifting the burden of proof, and arguing that defense counsel was "annoying." The State counters that Castillo failed to raise some objections at trial, that the prosecutor did not engage in misconduct, and that even if the prosecutor's statements were improper, any error was harmless.

Although our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.* When there has been a contemporaneous objection we determine factually if there was prosecutorial misconduct, then we determine whether the error was harmless. *Id.*; *State v. Hodges*, 105 Idaho 588, 592, 671 P.2d 1051, 1055 (1983); *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct. App. 2007). When there is no contemporaneous objection, however, a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as to result in fundamental error. *Field*, 144 Idaho at 571, 165 P.3d at 285.

The Idaho Supreme Court recently took the opportunity to clarify the appellate standards employed when analyzing alleged trial errors for harmless error or fundamental error in *State v. Perry*, ___ Idaho ___, ___ P.3d ___ (July 23, 2010) (reh'g pending). Where the defendant has demonstrated that prosecutorial misconduct has occurred, and such misconduct was followed by a contemporaneous objection, such error is reviewed for harmless error in accordance with *Chapman v. California*, 386 U.S. 18 (1967). *Perry*, ___ Idaho at ___, ___ P.3d at ___. "Under the *Chapman* harmless error analysis, where a constitutional violation occurs at trial, and is followed by a contemporaneous objection, a reversal is necessitated, *unless* the State proves 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* at ___, ___ P.3d at ___ (emphasis in original) (quoting *Chapman*, 386 U.S. at 24). Thus, Idaho now employs the *Chapman* harmless error test to all objected-to error. *Id.*

Where prosecutorial misconduct is not objected to at trial, a reversal may only occur when the defendant demonstrates that the violation qualifies as fundamental error. *Id.* at ___, ___ P.3d at ___. The *Perry* Court held that in order to raise a claim of fundamental error that may be considered for the first time on appeal:

> [T]he defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists; and (3) was not harmless. If the defendant persuades the appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

*Id.* at ___, ___ P.3d at ___.

### 1. Inflaming the prejudice and passions of the jury

Castillo first argues that the prosecutor committed misconduct by commenting that the State's witnesses were brave for testifying, thus "implying that Mr. Castillo or others would harm them for accusing him of wrongdoing." The prosecutor made two such comments, one in his initial closing argument and then again in rebuttal. The prosecutor stated in closing:

> Ladies and gentlemen, I finally want to wrap up with the idea -- it's not an idea, but just the fact that, look, we had Anna Mireles and her daughter come in here and testify, and Ms. Melendrez, and that's a lot of courage. They have to live in this community, they have to live with the consequences no matter what happens.

Defense counsel did not object to this statement. The prosecutor later stated in rebuttal:

9

At the end of the day, we have the victim, her daughter, another witness, they are taking a big step by coming in and saying, Yeah, this is what happened, this is what happened to us. They are being courageous to testify, but they have to go on --

Defense counsel objected to this second statement, and the objection was sustained.

With respect to the unobjected-to statement made during the initial closing argument, Castillo has not argued for application of the fundamental error doctrine. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Even assuming the issue had been properly presented on appeal, we conclude the prosecutor's statement does not amount to fundamental error.[4]

With respect to the prosecutor's second statement, Castillo objected, and the court sustained his objection. Castillo did not move to strike the prosecutor's statement, nor did he request a limiting instruction. Therefore, Castillo obtained the relief he requested, and we do not address his argument further.

### 2. Shifting the burden of proof

Castillo claims that the prosecutor shifted the burden of proof by arguing to the jury that Castillo should have put on his own witnesses to testify as to his innocence, specifically stating in his rebuttal argument:

Listen, the other thing I wanted to hit on was the missing witness thing. You know, yeah, there is lots of witnesses. What about all the girls that were with Alejandro and his friends? What about the girls that attacked Rose?
MR. BRIGGS: I am going to object to that, it sounds like he is shifting the burden.
THE COURT: Overruled. It's proper rebuttal.

Immediately following the objected-to statements, the prosecutor stated:

Thank you. They are missing witnesses, and it would be great to hear from all of them, but they are not here.
I mean, the thing is, you have got the evidence. You have got the victim, her daughter. You have got Angelica. You have got the officers. They are telling you this is basically what happened. You have got the evidence.

---

[4] Castillo's attorney asserted at oral argument that because the *Perry* Court determined that its restatement of the standards "shall not be given retroactive application," *Perry* at ___, ___ P.3d at ___, that case does not apply. However, because the prosecutor's statement would not qualify as fundamental error under either standard, we need not address counsel's contention that *Perry* does not apply.

When placed in its proper context, it is clear that the prosecutor's argument was not an attempt to shift the burden of proof, but rather an attempt to demonstrate that there was sufficient evidence for the jury to find Castillo guilty. The prosecutor's argument merely highlighted the fact that despite the absence of some individuals who witnessed the events that evening, the jury had the material witnesses to establish the evidence supporting the charges. Therefore, we hold that the prosecutor's comment did not constitute error.

### 3. Disparaging defense counsel

Finally, Castillo asserts that the prosecutor committed misconduct by arguing to the jury, over his objection, that defense counsel was "annoying" when he attempted to pin Mireles down to time frames. However, a careful review of the record makes clear that the prosecutor, in response to defense counsel's argument, was expressing annoyance at defense counsel's tactic of pinning Mireles down to a specific time frame and then using it against her during closing argument. While the prosecutor's statement was, at most, inappropriate, it was not an attempt to disparage defense counsel personally. Therefore, Castillo has failed to demonstrate that the prosecutor's statement constituted misconduct.

Because we have found no errors, the cumulative error doctrine does not apply.

### III.

### CONCLUSION

Castillo failed to establish that the district court had a duty to inquire into a potential conflict of interest and, as such, did not show a violation of his Sixth Amendment right to conflict-free counsel. Castillo failed to preserve for appeal his argument that the prosecutor committed misconduct in his initial closing argument. Moreover, the prosecutor's statement did not constitute fundamental error. The prosecutor's statements in rebuttal argument did not constitute prosecutorial misconduct. The cumulative error doctrine does not apply in this case. Accordingly, Castillo's judgment of conviction and sentence entered thereon are affirmed.

Judge GUTIERREZ and Judge MELANSON, **CONCUR.**