171 P.3d 1282

STATE of Idaho, Plaintiff–Respondent,

v.

Guy Michael COOK, Defendant–Appellant.

No. 31641.

Court of Appeals of Idaho.

Oct. 5, 2007.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Judge.

Guy Michael Cook appeals from the judgment of conviction entered after a jury found him guilty of statutory rape, delivery of a controlled substance, and possession of a controlled substance. We vacate and remand.

## I.

### FACTS AND PROCEDURE

On July 5, 2004, Cook was arrested and charged with possession of a concealed weapon. The next day, a complaint was filed charging him with the rape of a child under the age of eighteen years, three counts of delivery of methamphetamine, and one count of delivery of methamphetamine in the presence of his children. The two matters were joined, and the Kootenai County Public Defenders Office was appointed to represent Cook.

A search warrant was issued on July 8, 2004, for Cook's father's home, where Cook resided, and officers found methamphetamine residue and drug paraphernalia in various locations in Cook's bedroom. On July 16, a superseding indictment was filed charging Cook with the rape of K.V., a minor, one count of delivery of methamphetamine (alleging the delivery to any or all of five individuals, including the rape victim and two other minors), unlawful possession of a firearm, and possession of methamphetamine.

After Cook pled not guilty to all charges, he filed a motion to sever requesting the rape, gun, and drug charges each be tried separately. The state opposed the motion, but the district court partially granted Cook's motion to sever, severing the gun charge from the rape and drug charges and joining it with a gun charge in a separate case. The trial was rescheduled to November 8.

An amended superseding indictment was filed on November 1, charging Cook with rape of a child under the age of eighteen years, Idaho Code Section 18–6101(1), one

count of delivery of methamphetamine (alleging delivery to any or all of five individuals, K.V., Charles Walters, Megan Walters, a minor, Ashley Moore, also a minor, and Arlene Lindsay), I.C. § 37–2732(a), and possession of methamphetamine, I.C. § 37–2732(c). It was alleged that each offense took place at some point between March and July of 2004. The same day this amended indictment was filed, the Kootenai County Public Defender's Office filed a "Notice of Attorney Assignment Change" notifying the court that as of October 30, new counsel within that office was assigned to represent Cook.

On November 4, the date of the rescheduled pretrial conference, Cook's new counsel informed the court he had been assigned to the case because "Mr. Cook had been asking my office for new counsel for some time." The following day, Cook's counsel filed a "Notice of Potential Conflict of Interest" notifying the court that the Kootenai County Public Defender's Office had recently represented or was currently representing numerous of the state's witnesses in Cook's case, including the alleged rape victim and four of the five individuals named in the delivery count. On the first day of trial, prior to the jury being chosen, the potential conflict was addressed when Cook's counsel informed the court that no actual conflict existed, because he had not had any contact with the witnesses listed in the notice and had not seen their case files. He indicated that his motivation for filing the notice had been because "the appearance of impropriety arises" and that Cook's perception of a conflict of interest had clouded his relationship with his former attorney. The court afforded Cook the opportunity to consult with his counsel regarding the conflict of interest issue, consent to move for a continuance, and outstanding plea offers. After meeting with his client, counsel informed the court that Cook "directed me to go forward today."

Thereafter, the jury was chosen and the court took up the state's motions for leave to introduce evidence pursuant to Idaho Rule of Evidence 404(b), for which it had provided notice on November 4, 2004, and Cook's request to introduce evidence pursuant to I.R.E. 412 that K.V. had made false accusations of rape against several other men. The court deferred ruling on Cook's Rule 412 motion and granted the state's request, over Cook's objection, to introduce evidence that Cook had provided two minors, Amber and Ashley Moore, methamphetamine on one occasion in 2003.

The jury found Cook guilty of the rape of a child under the age of eighteen years, delivery of methamphetamine (unanimously agreeing that Cook delivered the drug to K.V., Megan, and Charles), and possession of methamphetamine. A judgment of conviction was entered in accordance with the verdict, and this appeal followed.

## II.

## ANALYSIS

### A. Admission of Rule 404(b) Evidence

On November 3, 2004, the state filed a notice of its intent to introduce I.R.E. 404(b) evidence—specifically, evidence that Cook had given "methamphetamine to Ashley Moore and Amber Moore [both minors at the time] in an apartment ... in Coeur d'Alene, Idaho, in 2003, as reflected in the testimony of Ashley Moore and Amber Moore at the Grand Jury Indictment of the defendant." Over Cook's objections that the testimony was too remote in time to be relevant, not relevant to an issue other than propensity, more prejudicial than probative, and that the required notice was untimely, the district court admitted the evidence, deciding it was relevant as to motive, plan, and intent, and that there had been no prejudice as a result of the non-conforming notice. The district court also found that the probative value of the evidence was not substantially outweighed by unfair prejudice and noted that it would permit its admission with a cautionary instruction.

At trial, Ashley Moore, who was sixteen at the time, testified that approximately one and one-half years prior to trial, in 2003, Cook provided her and her sister Amber methamphetamine in an apartment behind a grocery store in Coeur d'Alene where they

had both smoked it.[1] Later, Amber, who was fourteen at the time of trial, testified that she had smoked methamphetamine for the first time during the incident at the apartment, that Cook was present, but that she could not remember who had provided the drugs.

Rule 404(b) disallows the admission of evidence of other crimes, wrongs, or acts to prove a defendant's criminal propensity.[2] *See State v. Needs,* 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler,* 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct.App. 1987). However, such evidence may be admissible for a purpose other than that prohibited by the rule, such as to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake. I.R.E. 404(b); *State v. Avila,* 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct.App.2002).

■ This Court applies a two-pronged analysis to determine the admissibility of evidence of prior bad acts. First, the evidence must be relevant to a material disputed issue concerning the crime charged, other than propensity. *State v. Moore,* 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991); *State v. Medina,* 128 Idaho 19, 24, 909 P.2d 637, 642 (Ct.App.1996). "Relevant" evidence means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401. Whether evidence is relevant is an issue of law and therefore, it is a determination over which we exercise free review. *State v. Atkinson,* 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct.App.1993). The second step in the analysis is the determination of whether the probative value of the evidence is substantially outweighed by unfair prejudice. *Id.* When reviewing this step we apply an abuse of discretion standard. *State v. Enno,* 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark,* 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct.App. 1989).

■ Thus, our first inquiry encompasses whether evidence that Cook had supplied two minors methamphetamine, more than one year prior to the incidents he was actually charged with in the present case, is relevant for a purpose other than propensity. When admitting the evidence, the lower court indicated its belief that the testimony was relevant to motive, plan, and intent. In its brief to this Court, the state argues the evidence is relevant to prove Cook's actions were not the result of mistake or accident as well as probative of his knowledge of and access to methamphetamine and intent to provide the drug to minors and to smoke it with them.

We find no merit in the rationales used to justify admission of the two girls' testimony. Cook's intent was not genuinely at issue in this case. In *State v. Stoddard,* 105 Idaho 533, 537, 670 P.2d 1318, 1322 (Ct.App.1983), this Court discussed whether Rule 404(b) evidence that the defendant had previously stolen a vehicle was admissible to prove intent in a case where he had been charged with stealing a different automobile. In holding the evidence inadmissible for this purpose, we noted it was the type of case where the act charged against the defendant itself characterizes the offense; thus, guilty intent was proven by proving the act, and evidence of other crimes was not necessary or admissible to establish the accused's intent. We cited *Fallen v. United States,* 220 F.2d 946 (5th Cir.1955), where the court therein stated that if the defendant had in fact altered the serial numbers on two cars, there was "no real question of his criminal intent" in disposing of them on the black market. *Stoddard,* 105 Idaho at 537, 670 P.2d at 1322. *See also State v. Alsanea,* 138

---

1. This was an incident separate from and prior to the delivery of methamphetamine to Ashley that was charged in the present case.

2. Idaho Rule of Evidence 404(b) provides that:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Idaho 733, 740, 69 P.3d 153, 160 (Ct.App. 2003) (citing *Stoddard* in concluding prior bad acts were not relevant to prove the defendant's intent); *State v. Roach*, 109 Idaho 973, 974–75, 712 P.2d 674, 675–76 (Ct.App. 1985) (relying on *Stoddard* to conclude intent was not at issue where Roach's defense was that he did not commit the act, not that he committed the act with innocent intent).

Similarly, on the facts presented in this case, if Cook had sexual intercourse with K.V., gave drugs to any of the five persons named in the charge, and/or possessed methamphetamine, there is "no real question of criminal intent." In accordance with the evidence describing the charged offenses, there was no potentially viable defense that Cook committed the acts accidentally or without intent. Consequently, evidence of prior drug deliveries was not relevant in this respect. Whether Cook had knowledge of methamphetamine was also not in contention. Cook never claimed that he was innocent by reason of not knowing the substance that he "delivered" was methamphetamine or not being familiar with methamphetamine in general.

The district court also referenced the evidence as being relevant to motive, but we fail to see how this is so. In *Stoddard*, 105 Idaho at 538, 670 P.2d at 1323, the court noted that motive is not an element of larceny, the crime of which the defendant was charged, nor had Stoddard's not guilty plea, or any other action in the case, raised the issue. The situation is similar in this case—why Cook committed the alleged acts was not a material issue, nor did he make it so with his defense.

Finally, we also hold that admission of the evidence under the "plan" exception contained in Rule 404(b) was not appropriate in this case. Similar to the situation in *State v. Medrano*, 123 Idaho 114, 844 P.2d 1364 (Ct. App.1992), whether there was a "plan" in this case is irrelevant. In *Medrano*, the lower court, citing the plan exception to Rule 404(b), admitted evidence the defendant, charged with kidnapping a young girl after driving up next to her, had previously driven up next to two other young girls and beckoned them towards his vehicle. Noting there was no "plan" element of kidnapping, we

concluded the existence of facts leading to the inference that Medrano had a plan to pick up young girls was irrelevant to any issue in dispute. *Id.* at 119, 844 P.2d at 1369. Similarly, the charges which Cook faced included no "plan" element that would render the challenged evidence relevant.

Nor did the allegations in this case establish a link between events such that evidence of a "plan" implicating Cook existed. In *State v. Bussard*, 114 Idaho 781, 760 P.2d 1197 (Ct.App.1988), this Court discussed the plan exception in this context. The Court held the admission of evidence, in the defendants' trial for burglary, that the witness and defendant had previously engaged in several uncharged burglaries together was erroneous. *Id.* at 785–86, 760 P.2d at 1201–02. The Court noted:

> In the present case, the prior burglaries and the crimes charged were not shown to be progressive stages of a single plan formed in the minds of the defendants. Rather, each crime was self-contained; one was not a step toward the others.

*Id. Accord State v. Blackstead*, 126 Idaho 14, 19–20, 878 P.2d 188, 193–94 (Ct.App.1994) ("[W]here uncharged criminal acts of the defendant [are committed] *in furtherance* of an underlying plan to commit the charged crime, those acts are ... admissible to show the accomplishment of the criminal goal." (Emphasis added)); *Stoddard*, 105 Idaho at 536, 670 P.2d at 1321 ("For evidence of another crime to be admissible to prove the guilt of the defendant for the crime charged '[t]here must be a causal relation or logical and natural connection between the two acts, or they must form parts of but one transaction.'" (Citations omitted)). Here, there is no evidence "linking" the alleged delivery of drugs to Ashley and Amber Moore in 2003 to the actions constituting the charges Cook was facing for his actions in 2004. While it is true the 2003 incident included the delivery of drugs to minor girls, facts similar to several of the charges Cook faced in 2004, a "plan" as contemplated by Rule 404(b) is more than just baseline similarities between events. Given the nearly one year lapse, we perceive no logical manner in which Cook's providing drugs to the Moores was in furtherance of or

a precursor to the crimes for which he was charged. Rather, it was a distinct and "self-contained" incident.

If the evidence of Cook's unrelated drug deliveries were admissible here on the theories that have been advanced, the restrictions of Rule 404(b) would be virtually eviscerated. Given that there exists no permissible purpose for which the evidence was relevant, we conclude the district court committed error by allowing the state to present the testimony of Amber and Ashley Moore describing the 2003 incident.[3]

### B. Motion to Sever

■ Cook also contends the district court erred by allowing the state to try the delivery and possession charges with the statutory rape charge. Denying, in part,[4] Cook's motion to sever, the district court largely focused on the "sequence" of deliveries, the "continuity" between the delivery and rape acts, and the "related" period of time between the delivery and possession acts.

■■ Whether a lower court improperly joined offenses is a question of law over which we exercise free review. *State v. Anderson*, 138 Idaho 359, 361, 63 P.3d 485, 487 (Ct.App.2003). In contrast, an abuse of discretion standard is applied when reviewing the denial of a motion to sever pursuant to Idaho Criminal Rule 14; however, that rule presumes joinder was proper in the first place. *State v. Field*, 144 Idaho 559, 165 P.3d 273 (2007). Because we are reviewing the appropriateness of the initial joinder, we exercise free review.

■ A court may order two or more complaints, indictments, or informations to be tried together if the offenses could have been joined in a single complaint, indictment, or information. I.C.R. 13. Two or more offenses may be joined in a single complaint, indictment, or information if they are based on the same act or transaction, or on two or more acts or transactions connected togeth-

er, or constitute parts of a common scheme or plan. I.C.R. 8(a). Whether joinder is proper is determined by what is alleged, not by what the proof eventually shows. *State v. Cochran*, 97 Idaho 71, 73, 539 P.2d 999, 1001 (1975).

In *Anderson*, 138 Idaho at 362, 63 P.3d at 488, this Court found it was error to join battery and resisting arrest charges. There, Anderson was charged with misdemeanor battery for battering his girlfriend three months earlier. A few days later, he was approached by police officers who believed he had a warrant for his arrest and when they tried to speak with him, he fled on his bicycle. Anderson was subsequently charged with resisting an officer and the magistrate *sua sponte* joined the two charges. We concluded the offenses did not have a "sufficient nexus" to be properly joined under I.C.R. 8(a). *Id.* at 361, 63 P.3d at 487. We noted that the proscribed conduct giving rise to each charge occurred three months apart in different locations and involved different parties. In addition, the offenses did not have overlapping evidence that could most efficiently be presented by a joint trial and detailed evidence of each would likely have been inadmissible in the trial of the other as being irrelevant or unduly prejudicial.

Similarly here, there was not a sufficient nexus between each of the charges to make joinder permissible. The proscribed conduct giving rise to each charge was distinct and occurred at various times and locations and except for one minor overlap—the victim of the rape was one of five persons to whom Cook was accused of delivering methamphetamine—the parties involved, other than Cook, were different. There is also no allegation that any offense was the predicate to completing any other offense such that Cook's actions were part of an overall design or continuing course of conduct—rather, they were distinct and self-contained. *See Field*, 144 Idaho 559, 165 P.3d 273 (finding that

---

3. Having concluded the evidence is inadmissible under Rule 404(b), we need not reach the issue of whether the probative value of the evidence was substantially outweighed by unfair prejudice under I.R.E. 403 as the rule only applies to *relevant* evidence.

4. As mentioned above, the court severed a gun charge against Cook, but allowed the possession, delivery, and statutory rape charges to be tried together.

instances of sexual abuse were not sufficiently connected, nor did they embody a "plan" such that joinder was appropriate); *Bussard,* 114 Idaho at 785–86, 760 P.2d at 1201–02 (discussing the considerations in determining whether multiple offenses constitute evidence of a "plan" in the context of Rule 404(b)); *Blackstead,* 126 Idaho at 19–20, 878 P.2d at 193–94 (same); *Stoddard,* 105 Idaho at 536, 670 P.2d at 1321 (same). Nor was there allegation the offenses were "based on the same act or transaction" or connected together in a significant manner, aside from the allegation that one of the alternative recipients of the drug deliveries was also the rape victim.

We conclude the district court erred in denying Cook's motion to sever and in proceeding with the rape charge in the same trial with the delivery and possession charges.[5]

## C. Cumulative Error

 Having identified multiple errors, we would normally address whether, pursuant to I.C.R. 52, each of these errors was harmless.[6] *See Field,* 144 Idaho 559, 165 P.3d 273. However the cumulative error doctrine requires reversal of a conviction when there is an accumulation of irregularities, each of which by itself may be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's constitutional right to due process. *Dunlap v. State,* 141 Idaho 50, 65–66, 106 P.3d 376, 391–92 (2004). In order to find cumulative error, this Court must conclude there is merit to more than one of the alleged errors and then conclude that these errors, when aggregated, denied the defendant a fair trial. *Id.* at 66, 106 P.3d at 392.

 We conclude that even if each of the identified errors alone could be deemed harmless, and we make no such determination here, in concert they deprived Cook of a fair trial. First, the district court erred in allowing the introduction of highly prejudicial evidence of Cook previously supplying drugs

to minors that had no relevancy to the charges he faced. In addition, the misjoinder of the three charges resulted in the jury hearing irrelevant and highly prejudicial evidence of Cook's guilt on unrelated charges. As a result, we are not convinced that Cook received a constitutionally fair trial and remand for a new trial.

Since a new trial is mandated, we do not address Cook's argument that the lower court's denial of his motion to continue was erroneous.

## D. Conflict of Interest

 Cook asserts the trial court erred in failing to investigate his attorney's possible conflict of interest that had been brought to the judge's attention. We address the issue to provide guidance upon remand. The right to conflict-free representation derives from the Sixth Amendment as applied to the states by the Due Process Clause of the Fourteenth Amendment. *Powell v. Alabama,* 287 U.S. 45, 60–61, 53 S.Ct. 55, 60–61, 77 L.Ed. 158, 166 (1932); *State v. Lovelace,* 140 Idaho 53, 60, 90 P.3d 278, 285 (2003). This right has been accorded not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 1240, 152 L.Ed.2d 291, 300 (2002); *Lovelace,* 140 Idaho at 60, 90 P.3d at 285. It follows that assistance which is ineffective in preserving fairness does not meet the constitutional mandate. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

 When a trial court knows or reasonably should know that a particular conflict may exist, the court has a duty of inquiry. *Cuyler v. Sullivan,* 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333, 346 (1980); *Lovelace,* 140 Idaho at 60, 90 P.3d at 285 (citing *Wood v. Georgia,* 450 U.S. 261, 272–73, 101 S.Ct. 1097, 1103–04, 67 L.Ed.2d 220, 230–31 (1981)). The scope and nature of the affirmative duty of the trial judge to assure

---

5. Cook does not challenge the propriety of the delivery charge, pleading multiple separate offenses, in this case five separate deliveries, in a single count and we therefore do not address it.

6. Idaho Criminal Rule 52 requires that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

that criminal defendants are not deprived of effective assistance of counsel by joint representation of conflicting interests is second only to the concern as to how strong a showing of conflict must be made before an appellate court will conclude that the defendants have been deprived of their right to effective assistance. *Lovelace,* 140 Idaho at 60–61, 90 P.3d at 285–86 (citing *Holloway v. Arkansas,* 435 U.S. 475, 483, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426, 434 (1978)).

Idaho courts have yet to rule directly on whether the concurrent representation of a prosecution witness by a lawyer affiliated with defendant's counsel, as occurred here, constitutes an actual conflict of interest. In other contexts, however, our courts have made it clear that the representation of conflicting interests adversely affecting a lawyer's performance violates a defendant's constitutional right to counsel.[7] *See State v. Wood,* 132 Idaho 88, 98, 967 P.2d 702, 712 (1998).

Thus, the crux of the issue is whether, in representing a prosecution witness and a defendant, an attorney undertakes to represent conflicting interests. In *Dunlap,* 141 Idaho 50, 106 P.3d 376, our Supreme Court addressed a situation where one of Dunlap's attorneys was concurrently representing a prosecution witness, a jailhouse informant, on an unrelated charge. The Court held that since Dunlap's counsel had not been told of the informant's statement incriminating Dunlap until after Dunlap had pled guilty, and there was no evidence that counsel's performance prior to the plea had been rendered ineffective by the potential conflict, Dunlap's Sixth Amendment right to counsel had not been impeded. *Id.* at 62–63, 106 P.3d at 388–89. We glean from *Dunlap* that such a situation would pose a conflict, but because of the unique circumstances of the case, namely that counsel did not become aware the jailhouse informant had made incriminating statements in relation to Dunlap until after the guilty plea was entered—and thus had not concurrently represented conflicting interests—there was no impermissible conflict.

The list of potential conflicts arising from concurrent representation of a prosecution witness and a defendant include the possibility that the attorney-client privilege may hinder a lawyer from fully exploring any inducements a witness may have received to testify for the prosecution, *see People v. Grigsby,* 47 Ill.App.3d 812, 8 Ill.Dec. 243, 365 N.E.2d 481, 485–86 (1977); *Littlejohn v. State,* 593 So.2d 20, 24 (Miss.1992) (noting that counsel would be torn between "serving the witness' best interests in fully cooperating with the government in supplying credible testimony and the accused's obvious desire to discredit the witness' testimony"), and the fear that counsel's tactical decisions may be subtly, even subconsciously, affected to the detriment of one client by counsel's desire not to alienate another client, *see People v. Arreguin,* 92 Ill.App.3d 899, 48 Ill.Dec. 371, 416 N.E.2d 402, 404 (1981) (discussing the issue in the context of representation of both the defendant in this case and another party in an unrelated case who was the defendant's alleged victim and a witness). In sum, it is apparent that where a lawyer's other current client and the defendant are on opposite sides of the issue of the defendant's culpability (as is almost always the case in regards to a prosecution witness), an actual conflict is inherent in the representation. Recognizing that representation of the inevitably disparate interests of prosecution witnesses and a defendant threatens the Sixth Amendment's guarantee of counsel, we conclude that concurrent representation would create a conflict of interest.

However, we recognize that in this case it was *different* attorneys within the public defenders office who represented the prosecution witnesses and the defendant. Under most circumstances, such a distinction would be irrelevant as the conflict of one attorney is automatically "imputed" to the other attorneys in his or her firm, and personal contact

---

7. This concept has played out most commonly in courts' treatment of concurrent representation of co-defendants. While such representation does not automatically constitute a conflict of interest, if it becomes apparent that the defendants' interests diverge such that counsel is forced into representing conflicting interests (e.g., a dispute arises as to which defendant is the more culpable), a conflict arises. *See State v. Hairston,* 133 Idaho 496, 511, 988 P.2d 1170, 1185 (1999).

with the client and/or the client's information does not affect whether the conflict "taints" the affiliated attorneys. *See Smith v. State*, 126 Idaho 106, 110, 878 P.2d 805, 809 (Ct. App.1994). This has led many courts to conclude that affiliated attorneys' concurrent representation of a defendant and prosecution witnesses constitutes a conflict of interest. *See e.g., id.; Grigsby*, 8 Ill.Dec. 243, 365 N.E.2d at 485–86; *People v. Dace*, 153 Ill. App.3d 891, 106 Ill.Dec. 625, 506 N.E.2d 332, 335 (1987) (holding defense counsel had a *per se* conflict of interest where his law partner represented a witness against the defendant); *Austin v. State*, 327 Md. 375, 609 A.2d 728, 735 (1992) (holding that an actual conflict of interest existed where defense counsel's law partner represented a co-defendant who testified adversely to the defendant); *Commonwealth v. Wooldridge*, 19 Mass.App.Ct. 162, 472 N.E.2d 970, 974 (1985) (holding that defense counsel's recently concluded representation of key prosecution witness in a related matter while counsel's firm was preparing the defendant's defense constituted a conflict of interest); *Littlejohn*, 593 So.2d at 24 (holding that defense counsel's representation of the state's main witness against the defendant for the same offense was an irreparable conflict of interest); *Gordon v. State*, 684 S.W.2d 888, 892 (Mo.App.1985) (holding that defense counsel's representation of a key prosecution witness constituted a conflict of interest). *Cf. Smith*, 126 Idaho at 110, 878 P.2d at 809 (deciding there was no ineffective assistance where counsel had *previously* represented a prosecution witness because there was no current representation of conflicting interests and, if anything, the information gained from the previous representation would be used to the defendant's advantage). However, several jurisdictions have made a distinction between private firms and public defender's offices and rejected a *per se* rule that conflicts are automatically imputed to affiliated attorneys in public defender's offices. Instead, they have decided that a case by case analysis is more appropriate. In *State v. Bell*, 90 N.J. 163, 447 A.2d 525 (1982), co-defendants were both represented by the public defender's office, but the court held that the potential for conflict that exists in representation by members of a private firm does not exist with multiple representation by public defenders. *Id.* at 527. The court decided that the reasons prejudice is presumed in cases of multiple private representations—that there exists economic interest that each individual attorney shares in the clients of the firm and there is an image of unseemliness in permitting one lawyer to perform tasks that his partner cannot—do not apply to a public defenders office because:

> [p]ublic interest firms have no financial incentive in retaining the cases of joint defendants who might thereby be prejudiced. As a consequence, the public does not lose confidence in a rule allowing attorneys in the same office to represent joint defendants, even though a single attorney from that office could not handle the cases. Because "the primary, if not the only, responsibility of an assistant public defender is to represent individual citizens in controversy with the State" … we can expect the public defenders to withdraw from the case whenever joint representation may prejudice their clients. A *per se* rule requiring counsel from separate offices would therefore needlessly deprive many defendants of competent local public defenders.
>
> . . . .
>
> … [A]lthough the subtle influences that arise from public defenders practicing side by side in the same office may present difficulties in maintaining absolute independence, "the inbred adversary tendencies of [public defense] lawyers are sufficient protection."

*Id.* at 528 (citations omitted). The court determined that, rather than a *per se* rule, it was more appropriate to ask in individual cases whether "the circumstances demonstrate a potential conflict of interest *and* a significant likelihood of prejudice" and if so, "the presumption of both an actual conflict of interest and actual prejudice will arise, without the necessity of proving such prejudice." *Id.* at 529 (emphasis added).

Illinois courts have expressed similar rationales for not automatically considering one attorney's conflict of interest to be imputed to other attorneys in a public defender's of-

fice. *People v. Robinson*, 79 Ill.2d 147, 37 Ill.Dec. 267, 402 N.E.2d 157 (1979), involved three consolidated cases where the public defender had previously represented the victim in the purchase of the business that the defendant had robbed, as well as cases where the public defender's office represented co-defendants. The court held the imputation of conflict rule did not apply, noting that:

> [i]n many instances the application of such a *per se* rule would require the appointment of counsel with virtually no experience in the trial of criminal matters, thus raising, with justification, the question of competency of counsel. Balanced against this is the possibility, in most instances quite remote, that an experienced member of the public defender's staff might labor under a conflict of interest because another member of the staff was so burdened.

*Id.* 37 Ill.Dec. 267, 402 N.E.2d at 162. The court noted that "inbred adversary tendencies of the lawyer are sufficient protection" and proceeded to examine on a case-by-case basis whether a conflict existed. *Id.* 37 Ill. Dec. 267, 402 N.E.2d at 162. *See also People v. Nelson*, 82 Ill.2d 67, 44 Ill.Dec. 292, 411 N.E.2d 261, 265 (1980) (noting that the court had "declined to adopt a *per se* rule that attorneys in a public defender's office are members of an entity" and instead said that "where the question of conflict of interest arises 'a case-by-case inquiry is contemplated whereby it is determined whether any facts peculiar to the case preclude the representation of competing interests by separate members of the public defender's office'"); *People v. Duckmanton*, 137 Ill.App.3d 465, 92 Ill.Dec. 211, 484 N.E.2d 942, 944 (1985) (declining to extend the rule on *per se* conflicts of interest to include separate but simultaneous representation of a defendant and a state's witness by a different assistant public defender in the same office).

Similarly, in *Bolin v. State*, 137 P.3d 136 (Wyo.2006) and *Asch v. State*, 62 P.3d 945 (Wyo.2003), the court held that in the context of an alleged conflict of interest based on representation of co-defendants by separate attorneys from the public defender's office, a case-by-case inquiry, rather than *per se* disqualification, was appropriate. *Bolin*, 137 P.3d at 145; *Asch*, 62 P.3d at 953. This is because public defenders provide legal services not to the public defender's office, as in a private firm, but to individual defendants; because there is no financial incentive for attorneys in a public defender's office to favor one client over another; and because to find otherwise would needlessly jeopardize the right of individual defendants to skilled and competent representation. *See also People v. Daniels*, 52 Cal.3d 815, 277 Cal.Rptr. 122, 802 P.2d 906, 915 (1991) (noting that automatic disqualification would hamper the ability of the public defender to represent indigents in criminal cases); *State v. Pitt*, 77 Hawai'i 374, 884 P.2d 1150, 1156 (App.1994) (applying a case-by-case analysis because a public defender's office, as a government office, is different from a law firm).

We agree that automatically disqualifying a public defender where another attorney in the office has a conflict of interest would significantly hamper the ability to provide legal representation of indigent clients. This, together with the fact that such concurrent representation by public defenders generally will create no incentive (economic or otherwise) for diminished advocacy in such cases, convinces us that a *per se* rule imputing conflicts of interest to affiliated public defenders is inappropriate where there is no indication the conflict would hamper an attorney's ability to effectively represent a client. We hold that such conflict questions should be addressed by trial courts on a case-by-case basis, where the court takes individual situations into consideration to determine whether a defendant's right to counsel is threatened by competing interests.[8]

### III.

### CONCLUSION

The admission of evidence that Cook had previously supplied methamphetamine to two

---

8. We note that the permissibility of proceeding where an affiliated attorney has a conflict of interest would be influenced by whether an office has set up effective measures to prevent communication of confidential client information between lawyers employed on behalf of individual defendants. *See* RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 203(2) cmt. d(iv) (1996) (superceded by RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 123 cmt. d(iv) (2000)).

minors was impermissible Rule 404(b) evidence not relevant to any matter other than propensity. In addition, the lower court's denial of Cook's motion to sever was erroneous as joinder of the three charges was improper. Thus, having identified multiple errors, which in concert deprived Cook of a fair trial, we vacate Cook's convictions of the three charges. The district court's judgments of conviction for rape, delivery of a controlled substance, and possession of a controlled substance are vacated, and the case is remanded to the trial court for new and separate trials.

Chief Judge PERRY and Judge LANSING CONCUR.