JUSTICE NELSON
concurring in part and dissenting in part.
¶26 I concur with the Court’s decision to vacate Longjaw’s conviction for aggravated burglary, and with the Court’s decision to affirm on Issue 2. However, I dissent from Issue 1 because I disagree with the Court’s conclusion that the trial court adequately inquired into the conflict of interest raised by Longjaw’s standby counsel. In my view, standby counsel has the same obligations to avoid conflicts of interest as do appointed or retained counsel.
¶27 In this case, the State asserted in its brief on appeal that standby counsel “never announced they had conflicts of interest.” A review of the transcript in this case clearly shows that the contrary is true.
¶28 Prior to the start of trial, Ms. Kilby and Mr. Hood from the Region 2 Office of Public Defender (OPD), who were acting as standby counsel, informed the Court that there was a witness on the State’s witness list, Jennifer Haygood, who had been represented by the Region 2 OPD on a matter related to Longjaw’s case. Ms. Kilby and Mr. Hood informed the court that although the State may not call Haygood as a witness, Longjaw wanted to call her as a witness. Haygood was the daughter of the victim in this case. Ms. Kilby and Mr. Hood expressed concern that, in their opinions, a conflict of interest existed. The entire colloquy between the court and counsel follows:
MS. KILBY: [Jennifer Haygood] is on the State’s Witness and Exhibit List. However, it was our understanding the State was not going to call her; the reason being our office has represented Ms. Haygood in the past. We, Mr. Hood and I, took this issue through two levels of review. It’s our agency’s belief that this is not a conflict of interest. We did, however, just want to bring the issue to the Court in case the Court felt otherwise.
THE COURT: Well, at this point you’re simply standby counsel. And I’m not going to stop Mr. Long Jaw [sic], as long as he’s his own attorney, from putting on a defense or calling what witnesses he thinks are appropriate.
MS. KILBY: Certainly. And that wouldn’t be what we were requesting. We wanted to get-
MR. HOOD: We wanted to put the Court on notice in case *479 something happens where we are put back on the case and a conflict does exist. You know, we just wanted to alert the Court to the possibility of that.
THE COURT: All right. Well, did you represent her in connection with anything that she’ll be testifying about.
MR. HOOD: Tangentially, yes, Your Honor.
MS. KILBY: And, Your Honor, like I said, we’11-7 think even as standby counsel we might have a problem. But it is our agency’s position that we don’t. We have been through two levels of review but, if the Court feels otherwise, then-
THE COURT: At this point, I don’t have an opinion. So I guess, Mr. Marks, do you have anything you want to add on that point?
MR. MARKS: Your Honor, I don’t believe there’s a problem as long as Mr. Long Jaw’s [sic] representing himself. As Ms. Kilby said, I do not intend to call Ms. Haygood in my case, but I don’t see any reason the defendant can’t.
THE COURT: Well, I don’t know. I’ll have to think about it. I appreciate your bringing this to my attention. [Emphasis added.]
The court made no further inquiry into the matter.
¶29 “Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other right he may have.” United States v. Cronic, 466 U.S. 648, 654, 104 S. Ct. 2039, 2044 (1984). Furthermore, a criminal defendant’s right to the effective assistance of counsel includes the right to conflict-free representation. State v. St. Dennis, 2010 MT 229, ¶ 28, 358 Mont. 88, 244 P.3d 292 (citing U.S. Const. amend. VI; Mont. Const, art. II, § 24; State v. Cook, 171 P.3d 1282, 1289 (Idaho App. 2007)). Indeed, the Supreme Court pointed out in Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065 (1984), that effective assistance of counsel includes both a duty of loyalty and a duty to avoid conflicts of interest. The Supreme Court has also pointed out that “[i]t is well settled that ‘[a] criminal defendant is entitled to counsel whose undivided loyalties lie with the client.’ ” Stoia v. United States, 109 F.3d 392, 395 (7th Cir. 1997) (quoting United States v. Barnes, 909 F.2d 1059, 1065 (7th Cir. 1990); United States v. Ellison, 798 F.2d 1102, 1106 (7th Cir. 1986)).
¶30 I see no reason why standby counsel should not be required to fulfill the same basic obligations for effective representation as appointed or retained counsel. In fact, why appoint standby counsel at all if they are not required to offer effective representation when called upon by the accused to do so?
¶31 The Washington Supreme Court considered this very issue of *480 whether a conflict of interest between standby counsel and a defendant merited a presumption of prejudice justifying reversal of the defendant’s conviction when the trial court was notified of the conflict but failed to inquire into its nature and extent. State v. McDonald, 22 P.3d 791 (Wash. 2001). In that case, the court determined that even though a defendant who is afforded the right to self-representation cannot claim ineffective assistance of counsel for the obvious reason that the defendant has become his own counsel and assumes complete responsibility for his own representation, this does not mean that standby counsel has no obligations or duties to the defendant when standby counsel has been appointed by the court. The McDonald court stated that a defendant possesses the right to have conflict-free standby counsel “because standby counsel must be (1) candid and forthcoming in providing technical information/advice, (2) able to fully represent the accused on a moment’s notice, in the event termination of the defendant’s self-representation is necessary, and (3) able to maintain attorney-client privilege.” McDonald, 22 P.3d at 794-95.
¶32 The Washington Supreme Court upheld the appellate court’s reversal of the defendant’s conviction in McDonald holding that
when the trial court knows or should know of a conflict of interest between the defendant and standby counsel, it must conduct an inquiry into the nature and extent of the conflict. After such an inquiry, the court may remove standby counsel and then substitute or replace standby counsel, or take other appropriate action. Failure to make an inquiry and take appropriate action constitutes reversible error and prejudice will be presumed.
McDonald, 22 P.3d at 795 (emphasis added).
¶33 I agree with the Washington Supreme Court’s holding in McDonald that when a trial court knows or should know of a conflict of interest between the defendant and standby counsel, the court must conduct an inquiry into the nature and extent of the conflict. Failure to make an inquiry and take appropriate action constitutes reversible error and prejudice should be presumed.
¶34 The Court states at ¶ 13 of the Opinion that “the central issue briefed by the parties, which we deem dispositive, is whether an actual conflict existed in this case.” However, since the District Court did not hold an appropriate hearing on standby counsels’ assertions that a conflict did exist, we do not have enough facts, in my view, to resolve this issue.
¶35 This Court has repeatedly stated that “[wjhen a defendant complains about ineffective assistance of appointed counsel and requests new counsel, a district court must make an ‘adequate initial *481 inquiry as to whether defendant’s allegations are ‘seemingly substantial.’ ” State v. Dethman, 2010 MT 268, ¶ 16, 358 Mont. 384, 245 P.3d 30 (quoting State v. Happel, 2010 MT 200, ¶ 14, 357 Mont. 390, 240 P.3d 1016; State v. Gallagher, 1998 MT 70, ¶ 15, 288 Mont. 180, 955 P.2d 1371). An “adequate initial inquiry” occurs when the district court “considers the defendant’s factual complaints together with counsel’s specific explanations and makes some sort of critical analysis of the complaint. ” Dethman, ¶ 16 (citing Happel, ¶ 14). During such an inquiry, the district court’s duty is to determine “whether a conflict is so great as to result in a total lack of communication.” Dethman, ¶ 16 (citing State v. Hendershot, 2007 MT 49, ¶ 24, 336 Mont. 164, 153 P.3d 619).
¶36 Furthermore, the Supreme Court noted that while, ordinarily, prejudice to the defendant must be shown with respect to deficient performance by counsel, there are certain instances where prejudice is presumed, such as “when counsel is burdened by an actual conflict of interest.” Strickland, 466 U.S. at 692, 104 S. Ct. at 2067. In such cases, prejudice is presumed because “it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests.” Strickland, 466 U.S. at 692, 104 S. Ct. at 2067.
¶37 Moreover, in an earlier case, the Supreme Court found the following considerations persuasive:
An attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial. Second, defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem. Finally, attorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.
Holloway v. Arkansas, 435 U.S. 475, 485-86, 98 S. Ct. 1173, 1179 (1978) (internal citations and quotation marks omitted).
¶38 The Supreme Court concluded in Holloway that because of the seriousness of a violation of a defendant’s fundamental right to effective assistance of counsel, reversal of a defendant’s conviction should be automatic in situations where counsel raised an issue of conflict of interest to the trial court. To that end, the Supreme Court stated that the right to have the assistance of counsel “is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.” Holloway, 435 U.S. at 488, 98 S. Ct. at 1181. Thus, if a defendant’s Sixth Amendment right to counsel is infringed, prejudice is presumed *482 regardless of whether it was independently shown, and reversal is automatic. Holloway, 435 U.S. at 489, 98 S. Ct. at 1181 (citing Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792 (1963); Hamilton v. Alabama, 368 U.S. 52, 82 S. Ct. 157 (1961); White v. Maryland, 373 U.S. 59, 83 S. Ct. 1050 (1963)).
¶39 One of the requirements for any counsel is that counsel must be able to maintain attorney-client privilege. That requirement should be no different for standby counsel. In the instant case, the Court states at ¶ 16 that “Longjaw questioned [Haygood] briefly and the record reveals no involvement by standby counsel regarding Haygood, nor is any such involvement asserted by Longjaw.” Because the trial court did not inquire as to the conflict raised by standby counsel based on Haygood’s testifying in this case, we have no way to know why standby counsel was not more involved in questioning Haygood. The possibility exists that standby counsel could not assist Longjaw with questioning Haygood because of problems with attorney-client privilege regarding standby counsel’s representation of Haygood.
¶40 In addition, the Court asserted at ¶ 17, that “[ajlthough a potential conflict may have presented here, we conclude that the circumstances did not progress to an actual conflict wherein standby counsel were required to make a choice to the detriment of Longjaw’s interests.” Once again, because the trial court did not make an adequate inquiry into the potential conflict presented here, we have no way of knowing if an actual conflict existed.
¶41 Certain conflicts of interest are so basic that they cannot be accurately assessed after a trial, and prejudice should be presumed:
[I]n a case of joint representation of conflicting interests the evil-it bears repeating-is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney’s failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney’s representation of a client. And to assess the impact of a conflict of interests on the attorney’s options, tactics, and decisions in plea negotiations would be virtually impossible.
St. Dennis, ¶ 59 (Nelson, J., dissenting) (citing Holloway, 435 U.S. at 490-91, 98 S. Ct. at 1182).
¶42 In St. Dennis, this Court recognized that the OPD had established certain protocols to handle conflicts of interest between clients by *483 utilizing different Regions of the OPD system to represent clients with conflicts of interest. St. Dennis, ¶¶ 22-24. However, as I pointed out in my dissenting opinion in St. Dennis, the OPD system is burdened with significant flaws. St. Dennis, ¶ 75 (Nelson, J., dissenting); see also Hendricks v. State, 2006 MT 22, ¶¶ 21-39, 331 Mont. 47, 128 P.3d 1017 (Nelson, J., dissenting). Those flaws have appeared again in this case. ¶43 I would remand this case for a new trial on the charge of sexual intercourse without consent, and I dissent from our failure to do so.