IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 39301

| | | |
|---|---|---|
| DANIEL L. EBY, | ) | 2013 Unpublished Opinion No. 418 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: March 28, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John P. Luster, District Judge.

Order dismissing petition for post-conviction relief, <u>affirmed</u>.

Daniel L. Eby, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Daniel L. Eby appeals from the district court's order denying his petition for post-conviction relief after an evidentiary hearing.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This Court described the underlying facts of the criminal case in *State v. Eby*, 136 Idaho 534, 37 P.3d 625 (Ct. App. 2001):

According to the State's evidence, the victim, Mel Evenson, was murdered late in the night of March 25 or early the next morning. On that night, Daniel Eby, Jeremy Schmitz, Cliff Hicks and Evenson were working on cars in a garage belonging to Gerald Smith. Inside the adjacent residence were Smith and several other individuals. While in the garage, Evenson was repeatedly struck in the head with a baseball bat and with a large wrench. His clothing was removed and was then burned in a wood stove in the garage. Evenson's body was wrapped in a tarp and placed in the bed of his own truck. The body was then covered with flattened cardboard boxes, and the truck was abandoned in the countryside.

1

Approximately one month later, law enforcement officers found Evenson's body. An autopsy revealed that he had died of multiple cranial cerebral injuries due to blunt force impacts to his head. Further investigation led law enforcement officers to the garage where they discovered blood on the wood stove and on a motorcycle. Persons who had been present at Gerald Smith's residence on the night of Evenson's death were questioned by police. Ultimately, Eby was charged with first degree murder, conspiracy to commit robbery and attempted robbery. It was the prosecution's theory that, on the evening in question, Eby, Schmitz and Hicks believed that Evenson was carrying a substantial amount of narcotics and cash because he had just returned from an out-of-town drug transaction, and the three decided to kill Evenson in order to steal his money and drugs. A jury found Eby guilty of all of the charges. The district court imposed a unified life sentence with a twenty-five-year minimum term of imprisonment for first degree murder, and determinate fifteen-year sentences for attempted robbery and conspiracy to commit robbery, with the sentences to be served concurrently.

*Eby*, 136 Idaho at 536, 37 P.3d at 627. This Court affirmed Eby's convictions for first degree murder and conspiracy to commit robbery, but reversed Eby's conviction for attempted robbery because that offense merged with the conviction for first degree murder under the felony murder theory. *Id.* at 540-41, 37 P.3d at 631-32.

Eby timely filed a pro se petition for post-conviction relief with the district court. The district court appointed post-conviction counsel. Over the next several years, Eby's various appointed attorneys failed to amend his petition or otherwise advance his claims. The district court dismissed the petition for inactivity. The district court later denied Eby's Idaho Rule of Civil Procedure 60(b) motion for relief from the dismissal order, concluding that I.R.C.P. 60(b) does not apply to I.R.C.P. 40(c) dismissals for inactivity.

Eby appealed, and the Idaho Supreme Court reversed, holding that I.R.C.P. 60(b) does apply, in rare instances, to I.R.C.P. 40(c) dismissals. *Eby v. State*, 148 Idaho 731, 732, 228 P.3d 998, 999 (2010). The Court remanded the case for consideration of whether the facts presented by Eby constituted grounds for relief in this case. *Id.* at 734-38, 228 P.3d at 1001-05. On remand, the district court withdrew its previously entered dismissal of Eby's post-conviction petition.

Through new appointed counsel, Eby filed a post-conviction petition, with a supporting affidavit, raising three claims: (1) he was denied his constitutional right to counsel, free from any conflict; (2) there were material facts not previously presented and heard in violation of Idaho Code § 19-4901(a)(4); and (3) his trial counsel was ineffective for failing to adequately

communicate with him, failing to advise him of his rights, failing to adequately prepare for trial, and for preventing Eby from testifying on his own behalf. The district court took judicial notice of the underlying criminal case file, ordered an evidentiary hearing, and received briefing from both parties. The district court denied Eby's petition for post-conviction relief. Eby timely appealed.

## II.

## ANALYSIS

In order to prevail in a post-conviction proceeding, the applicant must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

### A.    Conflict of Interest

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence."[1] U.S. CONST. amend. VI. The amendment has been interpreted to include the right to be represented by conflict-free counsel. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). In order to ensure that a defendant receives conflict-free counsel, a trial court has an affirmative duty to inquire into a potential conflict whenever it knows or "reasonably should know that a particular conflict may exist." *State v. Lovelace*, 140 Idaho 53, 60, 90 P.3d 278, 285 (2003); *see also Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980). A trial court's failure to conduct an inquiry, under

---

[1]    The Amendment has been incorporated through the Due Process Clause of the Fourteenth Amendment to apply to the states. *See Powell v. Alabama*, 287 U.S. 45, 73 (1932). Idaho law also guarantees a criminal defendant's right to counsel. *See* IDAHO CONST. art. I, § 13; I.C. § 19-852.

certain circumstances, will serve as a basis for reversing a defendant's conviction. *See Cuyler*, 446 U.S. at 346-47; *Holloway v. Arkansas*, 435 U.S. 475, 488 (1978).

The district court's inquiry into the potential conflict of interest stemming from the Kootenai County Public Defender's Office representing both Eby and his co-defendant satisfied its constitutional obligation. The district court held a hearing on the record in the criminal case and gave both sides the opportunity to address the potential conflict. Because the district court conducted an adequate inquiry into the conflict, Eby is not entitled to automatic reversal of his conviction. The issue remains, however, as to whether the district court correctly determined that an actual conflict did not exist and Eby was not prejudiced.

To determine whether an actual conflict of interest exists, Idaho courts look to the standards set forth in the Idaho Rules of Professional Conduct. *See, e.g.*, *State v. Wood*, 132 Idaho 88, 98, 967 P.2d 702, 712 (1998). Idaho Rule of Professional Conduct 1.7 addresses conflicts of interest and, in 1999, provided that "A lawyer shall not represent a client if the representation of that client will be directly adverse to another client." I.R.P.C. 1.7(a). Rule 1.7 goes on to further provide that: "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests." I.R.P.C. 1.7(b). Representation may continue despite a concurrent conflict of interest when, among other things, a client waives the conflict through informed consent. I.R.P.C. 1.7(a)(2), (b)(2).

Under I.R.P.C. 1.10, a lawyer's conflict of interest is imputed to his or her entire firm. The rule, as it existed in 1999, provided: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8(c), 1.9 or 2.2." The rules define the term "firm" as "lawyers in a private firm, and lawyers in the legal department of a corporation or other organization." I.R.P.C. 1.10 cmt. (effective through June 30, 2004) (Definition of "Firm"). The comments to the rule further stated:

> [Q]uestions can also arise with respect to lawyers in legal aid. Lawyers employed in the same unit of a legal service organization constitute a firm, but not necessarily those employed in separate units. As in the case of independent practitioners, whether the lawyers should be treated as associated with each other can depend on the particular rule that is involved, and on the specific facts of the situation.

*Id.*

4

This Court addressed a similar argument regarding a public defender's office in *State v. Cook*, 144 Idaho 784, 171 P.3d 1282 (Ct. App. 2007). In *Cook*, this Court drew a distinction between private law firms and public defenders' offices and declined to impute one public defender's conflict to the entire office. *Id.* at 794, 171 P.3d at 1292. In its decision, the Court refused to adopt a per se rule regarding the treatment of public defenders' offices under the rules.[2] *Id.* Instead, it decided that it was preferable to analyze whether one public defender's conflict should be imputed to the entire office on a case-by-case basis. *Id.* Under this approach, the relevant inquiry is "whether 'the circumstances demonstrate a potential conflict of interest *and* a significant likelihood of prejudice.'" *Id.* at 793, 171 P.3d at 1291 (quoting *State v. Bell*, 447 A.2d 525, 529 (1982) (emphasis in original)). If so, there is a presumption that "'both an actual conflict of interest and actual prejudice will arise.'" *Id.* In reaching its decision, the court reasoned that:

> [A]utomatically disqualifying a public defender where another attorney in the office has a conflict of interest would significantly hamper the ability to provide legal representation of indigent clients. This, together with the fact that such concurrent representation by public defenders generally will create no incentive (economic or otherwise) for diminished advocacy in such cases, convinces us that a *per se* rule imputing conflicts of interest to affiliated public defenders is inappropriate where there is no indication the conflict would hamper an attorney's ability to effectively represent a client.

*Id.* at 794, 171 P.3d at 1292.

*Cook* is in accord with the Idaho Supreme Court's recognition that per se rules requiring automatic disqualification are "unnecessary and patently unworkable." *City of Coeur d'Alene v. Simpson*, 142 Idaho 839, 844, 136 P.3d 310, 315 (2006). Analyzing conflicts within a public defender's office on a case-by-case basis permits flexibility and ensures that indigent defendants receive adequate representation. At the same time, it protects defendants who would otherwise be prejudiced by a public defender's conflict of interest. The *Cook* framework also took into

---

[2]  Unlike the version of the Idaho Rule of Professional Conduct used in *Cook* and *Severson*, the prior version, applicable here, is more ambiguous as to whether a public defender's office would qualify as a firm. The question under the Idaho Rules of Professional Conduct, as enacted in 1999, might be whether the attorneys were employed in "separate units." If the public defenders, assigned to Eby and his co-defendant, were employed in separate units, then there may not have been a conflict of interest. However, because no prejudice stemmed from the potential conflict of interest, this Court will rule on that dispositive matter, rather than interpreting a rule of professional conduct that has since been amended.

account the unique nature of public defenders' offices: (1) unlike other government attorneys, public defenders represent individual clients rather than the government itself; and (2) unlike lawyers in a firm, public defenders do not have a financial incentive to represent clients with conflicts of interest because they do not share legal fees. *State v. Severson*, 147 Idaho 694, 706-07, 215 P.3d 414, 426-27 (2009).

Here, the district court found the following pertinent facts regarding the potential for a conflict of interest within the Kootenai County Public Defender's Office:

1. In the underlying criminal case, CR-1997-3342, the Petitioner was represented by Chief Deputy Lynn Nelson and Deputy Brad Chapman of the Kootenai County Public Defender's Office. The Petitioner's co-defendant Mr. Schmitz was represented by John Adams of the Kootenai County Public Defender's Office. The Petitioner's other co-defendant Mr. Hicks was represented by private attorney Jonathan Hull, a contracted conflict attorney for the Kootenai County Public Defender's Office.

2. Mr. Adams assigned Mr. Nelson and Mr. Chapman to represent Petitioner, and then contracted with Mr. Hull to represent Mr. Hicks. Mr. Nelson and Mr. Chapman, in accordance with the policy of the Kootenai County Public Defender's Office at the time, thereafter imposed a "Chinese wall."

3. The transcript of the trial in this matter reveals that the court was informed of the possible conflict of interest and the Chinese wall was discussed:

> This wall within our office is tight, it's one where we don't have access to their evidence, we don't have access to their investigation, we don't have access to anything they have. What we are trying to do is save the taxpayers some money when we agreed to do this and erect a wall. Funding for this case comes directly from the commissioners. Mr. Adams has nothing to do with it. We have a wall here.

4. Mr. Nelson and Mr. Chapman testified under oath at the evidentiary hearing in this case that there was nothing in the concurrent representation of Petitioner and Mr. Schmitz by the Kootenai County Public Defender's Office that affected any of the decisions they made representing Petitioner. Mr. Chapman, however, testified that he expressed a concern to Mr. Adams regarding the "appearance of impropriety," but did not discuss this concern with the Petitioner.

5. Mr. Nelson and Mr. Chapman do not recall obtaining a conflict waiver from Petitioner, and do not recall discussing the concurrent representation with Petitioner. However, during the evidentiary hearing, post-conviction counsel for Petitioner presented Mr. Nelson with a document that Mr. Nelson described as a conflict waiver signed by the Petitioner in regards to a witness named Crystal Walktel. Petitioner's post-conviction counsel did not move to admit the document into evidence.

. . . .

6

7. Mr. Nelson and Mr. Chapman called co-defendant Mr. Schmitz to the stand to testify at Petitioner's trial. Mr. Schmitz declined to testify. Mr. Nelson and Mr. Chapman did not discuss Mr. Schmitz's potential testimony or reasons for calling Mr. Schmitz with Mr. Adams.

. . . .

10. Mr. Durant works for the Kootenai County Public Defender's Office as an investigator and his wife Ms. Fisher also worked for the same employer. Mr. Durant was assigned to investigate the Petitioner's case and Ms. Fisher was assigned to investigate Mr. Schmitz's case. Mr. Nelson and Mr. Chapman had no reason to believe that the investigator's relationship impacted the representation of the Petitioner. Mr. Durant testified that he never discussed his investigation with his wife Ms. Fisher.

There is no evidence in the record that would support the conclusion that the conflict, if one existed, within the Kootenai County Public Defender's Office was likely to result in prejudice. Nor is there any indication in the record that any of the public defenders were acting in a manner adverse to Eby's interests. In fact, the office took steps to ensure that Eby received diligent representation. *See Cook*, 144 Idaho at 794 n.8, 171 P.3d at 1292 n.8 (noting that the likelihood of prejudice is influenced by "whether an office has set up effective measures to prevent communication of confidential client information between lawyers employed on behalf of individual defendants"). Mr. Nelson and Mr. Chapman's representation of Eby did not present a significant likelihood of prejudice. Accordingly, the court was not required to obtain Eby's consent for the representation to continue and Eby was not deprived of his right to be represented by conflict-free counsel.

## B. Material Evidence

Eby next claims material evidence was not presented in violation of I.C. § 19-4901(a)(4). Eby specifically argues:

At the hearing on the petition, Mr. Eby testified regarding the different weapons that were allegedly used in the incident. He further [testified] that the weapon he allegedly used could not have caused the injuries that he was convicted of causing. This information was not presented to the jury and in the interests of justice this requires Mr. Eby's petition to be granted.

At the evidentiary hearing, Eby was asked "was there ever a time that you thought there was a question that your attorney should ask that they didn't ask? To which Eby responded:

[M]y cousin alleged I had a splitting maul, sledge hammer or a pipe wrench and that I hit Mr. Evenson with it. And then at the garage, the crime scene, they found--I believe it was a pipe wrench. And they sent it to the lab to get tested,

7

and then it never made it into evidence, and they never asked—he was never asked what happened to that.

A post-conviction petitioner may be entitled to relief if he demonstrates the existence of "evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice."  I.C. § 19-4901(a)(4).  The four-part test a defendant must satisfy in order to be entitled to relief based upon a claim of newly discovered evidence is that:  (1) the alleged evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the alleged evidence is material, not merely cumulative or impeaching; (3) it will probably produce an acquittal; and (4) failure to learn of the evidence was not due to lack of diligence on the part of the defendant.  *Whiteley v. State*, 131 Idaho 323, 326, 955 P.2d 1102, 1105 (1998); *State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976).

In rejecting Eby's I.C. § 19-4901(a)(4) assertion, the district court stated:

> This Court is not persuaded by the Petitioner's testimony that the weapon he was alleged to have used could not have caused the injuries, because Dr. Bernard, the State's expert at trial, testified that the injuries were all caused by similar weapons.  The Petitioner's testimony then, while not previously heard, is not evidence that the jury did not consider at trial.

Even assuming the evidence was newly discovered, Eby cannot show it is material and not merely cumulative or impeaching.  Nor can Eby show that the evidence would probably produce an acquittal.  This evidence, at most, could have impeached the testimony of Eby's cousin.  However, Eby was convicted on felony murder charges, thus his possession of the murder weapon was not a material issue.  Further, the district court correctly noted the jury considered the murder weapon at trial.  Therefore, the district court did not err in dismissing this claim.

## C.    Ineffective Assistance of Counsel

Eby next claims he received ineffective assistance of counsel.  A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act.  *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009).  To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007).  To establish a deficiency, the petitioner has the burden of showing that the attorney's

8

representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

In Eby's petition for post-conviction relief, he raised an ineffective assistance of counsel claim. Within that claim, Eby claimed his trial counsel was ineffective for: (1) failing to adequately communicate with Eby; (2) failing to advise Eby of his rights; (3) failing to adequately prepare for trial; (4) preventing Eby from testifying on his own behalf. After receiving testimony from Eby and his trial counsel, the district court found the testimony from the trial counsel "to be more substantive and credible than the Petitioner's testimony that he could not remember the proceedings, but he could remember that his attorneys failed to consult with him regarding his rights, the legal procedures, and the strategy at trial and sentencing." The district court also found that Eby failed to show that he was prejudiced by any alleged deficiency.

On appeal, Eby only asserts specific facts with regard to his conflict of interest and the material evidence claims. Eby does not specify which conduct of his trial counsel was deficient, nor does he argue that he was prejudiced by the deficient performance. Moreover, Eby does not contend that the trial court's findings of fact were clearly erroneous. In his reply brief, Eby claims he has asserted an ineffective assistance of counsel claim and should not be penalized for not having all of the necessary case law at his disposal.

Eby has failed to properly assert his ineffective assistance of counsel claims on appeal. The fact that Eby is pro se does not relieve him of his duty of demonstrating he received deficient performance and that deficient performance prejudiced him. Merely claiming the district court erred by denying his ineffective assistance of counsel claim and arguing his counsel should have asked a question about the murder weapon, without discussing how the action constituted deficient performance or prejudice, does not afford Eby any relief on this claim. A

9

party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). *See also Zivkovic v. State*, 150 Idaho 783, 786, 251 P.3d 611, 614 (Ct. App. 2011) (Bare or conclusory allegations, unsubstantiated by any fact, are inadequate and do not even entitle a petitioner to an evidentiary hearing.).

## III.

## CONCLUSION

Eby has failed to demonstrate the district court erred in denying his petition for post-conviction relief. Therefore the district court's order dismissing Eby's post-conviction petition, after an evidentiary hearing, is affirmed

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**